May it please the Court, Jim Sabovich on behalf of myself, David Darnell, and for the related appeals in the 9241 matter, also on behalf of Scott Farrell and NTG. Just for the record, Scott Farrell and NTG are joining in the arguments for the sanctions appeal. I'd like to start the three appeals with the sanctions appeal because I think it's the most complex and the most, frankly, egregious. I think the overriding theme here is that this was not in any way an appropriate case for sanctions. There's really, when you look at the counterclaim and the sanctions motion, there's two broad categories of litigation misconduct that's alleged. The first is the conduct that is alleged by us, which was the basis for that counterclaim. That is, frankly, very serious and grave conduct. It is extortion of a witness. It is a premeditated plot to use false declarations to obtain death penalty sanctions. I'd submit that that's really the sort of thing that Rule 11, which is a rare and extreme remedy, is intended for. The issue that is raised by the court's order on sanctions and the arguments for sanctions is really no different than what this court hears every day, day in, day out. It is lawyers making legal arguments about case interpretation. Sometimes the law is decidedly in our favor. Sometimes it's not completely in our favor. Sometimes there's binding authority. Sometimes the district courts are all over the place. Sometimes there's consensus. And while I think the overall facts of the case and the different legal issues, and depending on how you count, there's about 12 of them, are complex, the rule that resolves this case is not. This is a legal position sanctions case. And this court, for the very obvious reason that a lawyer's job is to make legal arguments, and the nature of the adversary proceeding means the best lawyers are going to lose with some regularity no matter what we do. Can I ask about the alternative basis for sanctions that Judge Selma used, which was the Rule 16 violation? Right. That falls under the same rule because for Rule 16, the violation of the scheduling order, first, that wasn't the entire basis for sanctions. The basis for sanctions as to generally, because that would only apply to a small part of it. But jumping to the leave requirement. You say it would only apply to a small part of it. Sure, because the overall finding was that the counterclaim was filed without any type of proper legal investigation. Right. But it would still be, the upshot of everything is the counterclaim gets dismissed, and it gets dismissed whether it's based on failure to state a claim or whether it's a violation of the scheduling rule. So all roads lead to Rome. All roads would lead to the counterclaim being dismissed, but not dismissed with prejudice and not dismissed with counsel being sanctioned for having filed. You can be sanctioned for violating Rule 16, can't you? You can, but the sanctions here were not specifically for violating Rule 16. But he said that in the order. Maybe I'm wrong. I'm going to answer your question. That was my understanding as well. That was an alternative grant. Right. Sure, and I'm going to answer that. The issue with Rule 16 really goes to whether or not the counterclaim is compulsory. And here, because... Okay, so I got two questions about that. Sure. So if it was compulsory, why wasn't it filed way earlier? If it was really compulsory, you would have filed it way back at the beginning after you got the original claim, and not just after this one thing was added on about the Lanham Act part of this. The second thing was, even if the counterclaim's compulsory, the only thing that's compulsory under Rule 13a is the claim against an opposing party, quote-unquote, not the addition of a bunch of other parties. And that's also part of Rule 16 and what Judge Selma's Rule 16 order said. That is true. So why it was filed when it was has to do with the very odd circumstances of this case where the plaintiff amended at the last day to add... I get it. But if a counterclaim's compulsory, it's compulsory. It's not compulsory because we decided it was going to be compulsory at this particular moment in time. So how can you say, when the counterclaim wasn't asserted at an earlier stage, in response to virtually the same allegations with maybe one exception, that this was a compulsory counterclaim? Or at least that you thought that's what it was, and that was your reason for not complying with the Rule 16 requirements? It's actually three allegations. There's four sets of them. The main one is the false declarations. Which was in there from earlier on. Which is not there from earlier on. That was the... Was it only added in the last complaint of the other side? Well, I was talking about our claims. So I think the fundamental answer to your Honor's question is that at the time of our answer to the second amended complaint, we didn't have these claims. Because they were based on events that had happened subsequently. There are some of them that started sooner, the one I think your Honor might be referring to, is that there was an instance of extortion of a witness that was earlier. But the other ones are all subsequent events. And even for one of the ones that was earlier, there's an allegation of delayed discovery. And so as for Rule 16, I would say the counterclaim is compulsory in response to the third amended complaint. And when you look at the case law having to do with whether leave is required... But still, assume that it is. Assume there is some small portion of the claims in this counterclaim were compulsory. You had the scheduling order in place. Shouldn't you have asked leave of Judge Selma to file that? Well, I'd start by saying whether it's legally right or wrong. We clearly offended Judge Selma and we apologize for that. No, you violated his order. It's what you did. That's not offending Judge Selma. Well, we filed what we viewed as a compulsory counterclaim. And if you look at the rules for when you file a counterclaim in response to an amendment, the law in this area is very unsettled. There's no binding authority. And what the case law generally holds is that the courts, district courts in the central district, follow the moderate approach, which is when there is a change in the scope and a match in breadth, then you don't need to seek leave. Here, I think we had probably correct and very plausible arguments that there was a change in scope. And we see this actually after we filed because the third amended counterclaim is dismissed because plaintiffs have added a new scheme whereby it no longer fits the RICO enterprise, which is the heart of the claim. And we have at least one case where a court filed a permissive approach. The other response, Your Honor, is I'm not sure that you can do that. If you look at Judge Selma's scheduling order, what it said is that you have to file to move to amend by February 16. There's no possible way to do that. And Rule 13A doesn't set any type of mechanism by which you could move to amend. And Rule 16 gives you the mechanism. It talks about what you need to do to amend the scheduling order. So you'd go into Judge Selma and show good cause for why that deadline should be changed because you get this new claim that you have to deal with that was filed after the deadline. It's right in Rule 16. But that rule doesn't address, Your Honor, respectfully, a compulsory counterclaim where it is mandatory to file a Rule 13A. You were just saying that the reason you couldn't comply with this is that the dates had already run. I'm saying that if the dates in Judge Selma's order had already run, you have a mechanism under Rule 16 to ask Judge Selma to file a motion in front of Judge Selma saying, Judge, we need you to change this date and allow us to file this thing because the dates have already run. And now we need to file this. And here's why. Well, we did raise this when we opposed the motion to amend. And we put the court on notice that we were going to have to bring a compulsory counterclaim if this was granted. I would raise that Rule 13A is mandatory. If we did that, just playing this out, if we go into Judge Selma and ask for leave and say it's denied, they would still have an argument in a subsequent case that we had failed to file a compulsory counterclaim because we hadn't done it. The addition of new parties is part of the compulsory counterclaim requirement. The addition of new parties is because in this specific. The Rule 13A, it isn't. Well, it's. It's the Joinder Rules, which is Rule 19 and 20. And this would be permissive joinder under Rule 20. But these are new parties that the court has jurisdiction over because they've submitted declarations in the action. I guess my point is that even if you were right that the counterclaim against the plaintiffs in the case was compulsory, your addition of these other parties and making a counterclaim against them was not a compulsory counterclaim because Rule 13 just talks about a claim that you file back against the opposing party, not against new parties that you're adding. Well, it does. But Rule 13A also references other parties in saying you don't bring it if there are parties over which the court would not jurisdiction. And in this case, it's a little odd because it's a RICO conspiracy and parties acting together in concert. So I'm not sure the case could be brought by leaving out individuals who are alleged to be part of that conspiracy. Are you addressing only sanctions or are you arguing any other issue? I'm addressing the other issues, too. Okay. Well, maybe you should address some of the other issues because you're running out of time. Certainly. As for the appeal of the enforcement order, I would say the parties are in broad agreement that the term sheet is enforceable and that the case is settled. The issue is that Judge Selma effectively rewrote the term sheet by misinterpreting specific portions of it. And I would say the first is, and again, I apologize for being a bit cryptic, much of the materials are sealed so I can't refer to them directly. The first issue is it simply directed the wrong party to pay. This is not a harmless error and it is also not something that is mooted by payment on appeal. The second issue is confidentiality. And I think the district court was correct in finding that confidentiality was the principal issue in the case, but incorrect in stating that confidentiality for settlement terms constituted a ceiling as opposed to a floor of what the parties were discussing. I think that's true because if what Judge Selma found was actually what the parties intended, that they had said settlement terms and then will negotiate about which of those settlement terms, the extrinsic evidence would have showed the parties then negotiating about those settlement terms. It did not at all. I think also general prevailing practice informs the decision here. Confidentiality for settlement terms is very common to the point of being near ubiquitous. There would be no need for a separate addition to negotiate about which of the settlement terms was. Whereas what our interpretation is that settlement terms was the floor and that the parties would then negotiate about what in addition to settlement terms would be discussed is certainly more common. There are plenty of cases that address that. The next issue is what I'll refer to as the remedies provision. And here, again, without getting into the specific content of it, the court effectively read out a provision that the parties had negotiated. And it makes it fundamentally different than the Facebook case, which the plaintiff and the court rely on, in that in Facebook, you're just filling in an omitted term. Here, you're actually eliminating a material term of the contract that has been negotiated. And lastly, for plaintiffs, well, actually, I will, two minutes left, I will reserve. Okay, thank you. Thank you. All right, so how are we dividing this? Mr. Morris, are you going first? May it please the court, I'm Joseph Morris. I represent the Bucks, who are parties only in number 229950, 550. I will be arguing, I guess, as we've now framed it, the sanctions issue. And matters related to that. Mr. Arhangelsky, who's on the video screen, will be arguing the issues in the other two cases. He represents all the other parties in those cases. He's also nominally, I guess, in this one. No, he's not in this one at all. The Bucks stand alone. The Bucks stop here. And that's probably the right place for me to begin. The Bucks are witnesses in the tragic situation of Tricia Carlberg, about which you've read. And they end up now being on the barrel end of what will happen if you revive, you reverse Judge Selness' order. You'll not merely be terminating the sanctions, you'll also be reviving the counterclaim. And the only people answering the counterclaim who haven't settled out, the only people who haven't been covered by the settlement issues that are going to be discussed in the term sheet debate, are the Bucks and the mother. Why is that true? Isn't the dismissal and the sanctions a separate issue? Can we... One order. I'm sorry. It's a single order. Yeah. But we could reverse only part of it. Well, you could do that. And if you reverse it, I hope you don't reverse the part that dismisses the, or rather strikes, the First Amendment counterclaim. I don't even think that's an issue before us. Well, what's... As I understand it, it's only the sanctions that's before us, so not the motion to dismiss. The notice of appeal appealed from the entire order. Fair, but I don't think those were argued, is my point. Well, I'm thrilled because the peril for the Bucks is, of course, my primary concern. Because the sanctions didn't go to the Bucks. No, no. The Bucks are... The benefit of the sanctions did not go to the Bucks. No, that's correct. Right. So they don't really have an interest in the sanction itself. They have no interest in the sanction itself. You don't care about the sanction, you just care about the counterclaim. I care about the counterclaim, right. And I care about defending the entirety of Judge Selnut's order for that reason. There's a wonderful word that appears at the bottom of the very last line of page seven of Lerner Counsel's reply brief. It's the word gestalt. And to take it out of a psychological or philosophical context, what that means here is the totality of circumstances. And the gestalt that Judge Selnut was facing when he was confronted with this, the filing of this counterclaim, was the following. First of all, as the court has noted, it was filed in violation of his scheduling order. And the scheduling order was not a cookie-cutter order off the shelf. It was an order that was addressed to a very complicated case that had been before him for years, that had been up here a couple of times already, that gestalt had him deciding which set of rotten lawyers were corrupt lawyers and which were the clean lawyers trying to expose the other lawyers. He was very familiar with those facts. He was very familiar with the facts as to whether or not this counterclaim presented fresh issues rather than matter that had been known and was available for pleading years before. That was part of the gestalt, as Mr. Sobovich puts it in his brief. It was in front of him. But also in front of him is more. When the counterclaim suddenly appears on his docket in the course of an order, in an affront to an order that's putting the case on, at last, a trial path for a definitive, a glide path to a definitive trial, it threatens not only to delay the trial by adding new parties. Among the new parties who are added are Mr. Arhengelsky himself, who's on your screen here, and his co-counsel. In other words, the counterclaim attacks the counsel for all the other parties in the case, which means what? Which means there's going to have to be new lawyers in the case. It's a dramatically new case, this gestalt. It's not going to go to trial anywhere close to the schedule that Judge Sone has set after all these years. That is a major affront to his effort to manage the case. The case presents the question, is this a compulsory counterclaim? Perhaps there's a debate. Perhaps there's a reasonable debate on whether or not it's a compulsory counterclaim. We know that there's nothing about the allegation of a third pawn, a third pattern of RICO behavior in the third amended complaint that's filed by these plaintiffs, the natural immunogenics group, that changes the dynamics of the case toast to justify the counterclaim. The case for it being a compulsory counterclaim is exceedingly weak, particularly when, as Judge Selma correctly notes, in the order from which we're taking this appeal, from which this appeal was taken, those facts could have been pleaded long before. So I think that Judge Selma got it exactly right. The order in which he struck the counterclaim held the motion to dismiss, the Substantive 12b6 motion to dismiss, moot because he was striking the counterclaim, and imposed the sanctions because there had been the violations of his scheduling order, and more, the gestalt showed him that the violation of the scheduling order was intended seriously to disrupt the prosecution of a case, the management of a case in a way that was working prejudice to the other side by requiring them to get new counsel, reviving issues that he'd already disposed of, and relying on facts that could have been pleaded years before if they were generally meritorious. I guess that's my problem. If it's questionable whether or not it's a compulsory counterclaim, and then it's questionable whether or not that that's subject to the scheduling order, then why does that require sanctions? If it's all questionable, it seems like that's not... I'm suggesting that if it is questionable, Judge Sullivan decided it. That is to say, he had good reasons for holding that the claim was not compulsory, and in fact, elements of the counterclaim were out of time. He had good reasons for... That's a legal disagreement, though, whether or not it's compulsory or counterclaim, and then whether or not that compulsory or counterclaims have to comply with the scheduling order also seems like a legal question. Yes, so in the midst of the gestalt, there may be an interesting legal debate, but the rest of the gestalt shows a direct affront, a direct defense to the effort of the court trying to manage its docket in a way that's fair to both sides, and that's deliberately what the appellants here sought to do, which is why Judge Sullivan's order should be affirmed. Time is up, and I yield the floor to Mr. Arhengel. Time isn't actually up, but if you... We have no further questions, and you have nothing further... Thank you. You're very kind, Your Honor. My chair is up. Mr. Arhengel, he's ready. Okay. All right. Mr. Arhengelsky. Good morning, Your Honors. Peter Arhengelsky on behalf of the appellee in cross-appellant natural immunogenics. Your Honors, with respect to the appeals related to the enforcement of the court's settlement order, I'll speak to that. The district court, in this case, properly applied this court's precedent in Facebook and enforced the term sheet under the agreed terms, which were unambiguous. As noted by Mr. Sebovich, the appellants have never disputed at all that the case is settled under the term sheet and that the term sheet is binding and enforceable. The question for the court... In fact, hasn't the amount of money already been paid? To the extent that I don't know... I can discuss the confidential matters and give confidentiality orders, and I sort of refrain from doing that because I don't want to tread beyond what we've agreed is confidential in this issue. But, you know, it's just simply... I think the question is not whether or not the agreement is enforceable, not whether or not the case has been settled, but whether or not Judge Selma properly interpreted the contract. And I think because the terms, especially those specific terms that are issued here on appeal, including the confidentiality term, those are, I think, unambiguous terms that are plain on their face. I don't think there's a reasonable basis to conclude that Judge Selma committed any error in his interpretation of those contracts. However, I think unless this court has questions with respect to the court's enforcement of the agreement itself, I'd like to discuss our cross-appeal. I actually do have one question. So, it has to do with the liquidated damages clause relating to the confidentiality, which essentially drops out of the picture when Judge Selma enforces the settlement. So, it's like, you know, I'm a district judge, so in my day job I do a decent amount of mediation, and confidentiality clauses are pretty routine and liquidated damages provisions tied to them are almost as routine, and largely because it's hard to prove what your actual loss would be from a violation of a confidentiality requirement. So, the only thing I find a little bit troubling about this is what happens to the liquidated damages provision. It just kind of drops out of the picture? What happens with that in the enforcement? And if it's gone, why isn't that a problem? Well, I think it drops out to the extent that the court would follow its precedents in Facebook. Liquidated damages was listed in the agreement, and I think the parties had an agreement to further negotiate that term. They fulfilled that agreement to further negotiate, but they didn't reach any agreement on a long-form agreement. I think it's proper to construe the liquidated damages clause as an omitted term under Facebook, because a liquidated damages clause must have a value certain for it to be an enforceable term. Absent a value, liquidated damages is nothing. And so, you follow the Facebook decision, and, you know, even if we assume, and I'm not conceding that the liquidated damages clause was material, then as an omitted term, Facebook looks to whether or not the agreement can continue to be enforced on balance. And it can, and not only can the court enforce it under Facebook, absent liquidated damages term, but, you know, the appellants in this instance also agree that the court can enforce it because they don't challenge the enforceability of the term sheet itself. And so, I think it is appropriate for the court to enforce the agreement based on the terms that the parties had agreed to. And those terms were, as the district court correctly found, you know, all the essential terms of contract were present in the term sheet. Yeah, but I guess most enforcements of settlement when there's issues about whether there were terms, you know, what terms should be included or not, most of them have to do with whether there was some significant term that was omitted, which the omission of which kind of makes it not an agreement. But here something's been dropped, and I guess maybe it's, I get everything that you said about Facebook and all that, and maybe it's more like just a philosophical question is that that term has now just essentially disappeared. It doesn't exist, right? So if somebody wants to enforce the confidentiality requirement, they have to prove actual damages as opposed to relying on some fixed agreed-upon number. That is the effect of the district court's decision, and we agree with that. The parties, I think the only thing that the term sheet provided was an agreement to further negotiate, as I mentioned, and there's no argument that we didn't fulfill that obligation. The parties just simply did not agree. So to the extent that they didn't agree, the term would drop out. All right, I'm done. You can move on to your other thing. Very briefly, with respect to the cross-appeal, we believe the district court erred in overlooking the violation of Rule 5.6 of the California Rules of Professional Conduct. The court should have concluded that the appellants breached their ethical obligations by insisting on settlement language that was in violation of RPC 5.6. Sanctions would have been warranted for litigation conduct that falls below those thresholds in the RPC 5.6, and the district court, under the court's precedence, had a duty to evaluate that question. The ethics opinions that we cited before the district court in our briefs, they established that even indirect restrictions on the practice of law will violate 5.6, and here I think the demands that were placed on counsel as part of the settlement process went well beyond even those that were present in those ethical opinions. The specific restrictions that NTG demanded on counsel as part of the settlement process involved a prohibition on the use or disclosure of any and all orders and recommendations in the underlying action and the action, and that's at the EOR 3110, and what that does is place a direct restriction on the practice of law by effectively preventing counsel from citing precedent or disclosing precedent in future matters, which is, of course, I think a per se limitation on the practice of law. If that's not a restriction on the practice of law by commanding what counsel can and cannot use as far as precedent in future practice, I'm not sure what would be. And I think critically, the appellants Mr. Savage has, they have not denied that that would be the effect of the demands that they placed on counsel. They don't demand that the language in their settlement agreement would have had the effect of restricting our ability to use this precedent. They don't deny that the confidentiality demands they placed on us would have prevented us from even having conversations with the State Bar investigators in the related disciplinary matters regarding the aspects of the case and the evidence that we collected. And so, the question, I think, in this instance becomes whether they did so with an improper purpose. The District Court didn't address that issue directly in the sanctions analysis. The District Court addressed the ethical violation as part of the public policy analysis, which we think was error. We think the record strongly suggests that NTG never, not only understood what the effects of their language would be, but intended for them to have that unethical purpose. And as a consequence, the District Court erred by not evaluating the sanctions question in light of the ethics violation. I see that my time has been exceeded, but I'm happy to answer any questions the Court has had. No, I don't think so. So, thank you, counsel. Mr. Savage, I think you have two minutes. First, to respond on the sanctions appeal, I understand opposing counsel's argument that the counterclaim looks odd and that it adds people close to a trial deadline and adds a fair number of people. It's a highly unusual case where, not far from trial, you have what is, I think, fairly described as a very extreme litigation event happen where you have three false declarations and no one's really while it's a counterclaim, no one's really disputing that they were false. Can you address opposing your friend's argument? Are you challenging, are you appealing the dismissal of the counterclaim? No, I thought we were very clear on that. And second, the argument that it was a mandatory or compulsory counterclaim and that alleviates you from the rule, the scheduling order, did you make that argument to the District Court? Yes, absolutely. It wasn't quite addressed. It was just a very short... It was not addressed in the District Court's order. It was addressed quite a bit in our briefing. And on that one, and I think on most of these, if you go through it for the specific legal issues of compulsory counterclaim, leave requirements and statute of limitations, it's usually the case that there is mixed law or, in the case of a few of these, I think it's fair to say that the District Court's order by adopting arguments made by plaintiff just misstates the law or adopts legal positions that don't exist. Let's take compulsory counterclaims as an example. The position is effectively that the compulsory counterclaim rule only applies to the first answer and not subsequent ones. Rule 13.8 doesn't say that. And there are cases that we cite that address it. And I think if you go through that, and I don't have time to, I think that's true of all of them. As for the scheduling order, I think this really folds in with whether or not you are required to seek leave at the time of an amendment. As a practical matter, Rule 13.8 required a counterclaim within 21 days. Even if you wanted to, you couldn't bring a motion to amend and have it heard and decided within that time. I understand that there are extreme things we could do, possibly, but we're in an odd, very odd circumstance where the rules don't clearly address it. It very much looks like a compulsory counterclaim. And if you don't bring it, you've just blown your client's claim. All right, counsel, you've exceeded your time. So, thank you very much. Thank you, Your Honor. And Natural Immunogenics Court v. Starnow will be submitted, and the session of the Court is adjourned for today. All rise. This Court, for this session, stands adjourned.
judges: WARDLAW, BUMATAY, Kennelly